IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Case No. 14-CV-00030-RM-CBS

MICHAEL FIESELMAN, Personal Representative of the Estate of Kathleen Fieselman[1],

    Plaintiff,

v.

DELILAH LEWIS (Denver Deputy Sheriff in her personal capacity),
THE CITY AND COUNTY OF DENVER,
GARY WILSON (Denver Sheriff Department Director of Corrections), and
ALEX J. MARTINEZ (City and County of Denver, Manager of Public Safety),

    Defendants.

---

# ORDER

---

This matter is before the Court on multiple motions:

(1)    Defendants the City and County of Denver ("the City"), Gary Wilson, and Alex Martinez's (collectively, "Denver Defendants") motion to dismiss (ECF No. 32);

(2)    Defendant Delilah Lewis' motion to dismiss (ECF No. 33); and

(3)    Plaintiff Kathleen Fieselman's "Unopposed Motion to Dismiss the Second Claim for Relief and to Dismiss all Defendants except Delilah Lewis" ("Plaintiff's Motion") (ECF No. 50)[2].

---

[1] Michael Fieselman was substituted as Plaintiff in this matter by Order of the Court. (ECF No. 55.) References to "Plaintiff" in this matter are to Kathleen Fieselman.
[2] On September 2, 2014, Magistrate Judge Shaffer granted Plaintiff's Motion. (ECF No. 51.) As discussed in part III.B of the Order, because Plaintiff's Motion was not referred to the Magistrate Judge, the Magistrate Judge lacked jurisdiction to grant Plaintiff's Motion.

All motions pertain to Plaintiff's Amended Complaint (ECF No. 25) which brings two claims for relief related to Defendants' conduct while she was detained in the "Denver Police Administration"[3] building located at 1331 Cherokee Street, Denver, Colorado 80204 subsequent to Plaintiff's arrest on theft charges. (ECF No. 25 ¶ 6.) Claim One alleges Defendant Lewis, pursuant to 42 U.S.C. § 1983 ("Section 1983"), violated Plaintiff's Fifth and Fourteenth Amendment rights. (ECF No. 25 ¶¶ 25-28.) Claim Two alleges Denver Defendants violated Colorado state law by their negligent conduct. (ECF No. 25 ¶¶ 29-33.) Subsequent to Plaintiff's bringing this lawsuit, she passed away. (ECF No. 49.)

For the following reasons, the Court: (1) DENIES as MOOT Denver Defendants' motion to dismiss (ECF No. 32); (2) GRANTS Lewis' motion to dismiss (ECF No. 33); and (3) GRANTS Plaintiff's Motion (ECF No. 50).

## I. BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint.

Plaintiff "is bound to a wheelchair, has very limited control over her arms, no control over her legs, and lives by a tracheostomy tube that allows her to breathe." (ECF No. 25 at 2.) Plaintiff is "dependent on a service dog that is specifically trained to help her when she stops breathing." (ECF No. 25 at 2.)

On November 8, 2012, the Denver County District Attorney's Office contacted Plaintiff regarding "turning herself in" on theft charges related to Denver District Court case number 2012 CR 5068. (ECF No. 25 ¶ 6.) The Denver County District Attorney provided Plaintiff with an email that stated "she was to be processed with a $2,500 personal recognizance bond,

---

[3] At numerous points, Plaintiff's Amended Complaint makes reference to a "jail." (ECF No. 25 ¶ 7.) Plaintiff's Amended Complaint, however, fails to identify the jail with specificity. In the "Introduction" to her Amended Complaint, Plaintiff alleges that she was detained at the "Van Cise-Simonet Detention Center." (ECF No. 25 at 2.) Regardless of where Plaintiff was detained, her Amended Complaint is deficient as discussed in the Order.

photographed, fingerprinted, and let go." (ECF No. 25 ¶ 7.) Subsequent to this contact, Plaintiff arrived at the Denver Police Administration accompanied by her son and service dog. (ECF No. 25 ¶ 6.) Plaintiff was taken "into custody and transported . . . over to the jail." (ECF No. 25 ¶ 7.)

While in the jail, Plaintiff was told that "she could no longer have her service dog as the jail was without the proper facilities to take care of the dog." (ECF No. 25 ¶ 8.) Defendant Lewis asked Plaintiff "why are you crying" to which Plaintiff responded "because you took my service dog away from me" and Defendant Lewis then replied "you should have thought about that before you did what you did to get put in here." (ECF No. 25 ¶ 9.)

While in custody, an inventory was conducted of Plaintiff's personal items. (ECF No. 25 ¶ 10.) A strap, which is tethered to Plaintiff's wheelchair, allows for Plaintiff's "legs to stay shut." (ECF No. 25 ¶ 10.) When removing the strap, Plaintiff alleges that "Lewis disingenuously insisted that [Plaintiff] threw the strap." (ECF No. 25 ¶ 10.) Lewis later refused to strap Plaintiff's legs to the wheelchair for modesty purposes because Plaintiff "threw it at her." (ECF No. 25 ¶ 12.) Lewis then stated that she was going to show Plaintiff how "un-nice [she] can be" toward Plaintiff. (ECF No. 25 ¶ 11.) Lewis then "unhooked [Plaintiff's] bra and searched her." (ECF No. 25 ¶ 11.) Plaintiff then asked "the officer to hook her bra up again as she was physically unable to do so and the officer refused." (ECF No. 25 ¶ 11.) Plaintiff's "breasts were exposed, under her shirt." (ECF No. 25 ¶ 11.) Plaintiff "requested an inner cannula (life saving equipment) from her purse and [Defendant] Lewis yelled at [Plaintiff] and stated 'I don't care about your problems.'" (ECF No. 25 ¶ 11.)

Plaintiff was then moved past a group of men in the detention area. (ECF No. 25 ¶ 12.) Plaintiff felt immodest because her "bra cups [were] sticking out well above her breasts and her

3

nipples being prominent because of no bra [and] [s]he . . . had her legs splayed apart." (ECF No. 25 ¶ 12.) Plaintiff then asked to see a nurse and Defendant Lewis "wheeled" Plaintiff to "a nurse's station where she was parked outside of the door . . . next to a male inmate." (ECF No. 25 ¶ 13.) Plaintiff was then wheeled "away from the nurse's station and paraded . . . once again in front of the male inmates." (ECF No. 25 ¶ 13.)

Plaintiff was then transported to a "locked cell that had a glass front on it [and the cell] faced the 'pit' full of all [] the male inmates." (ECF No. 25 ¶ 14.) Plaintiff alleges she was "vulnerable to the male inmates staring at her exposed genital area." (ECF No. 25 ¶ 14.) Plaintiff alleges that "the officers could not maneuver [Plaintiff] in the wheelchair to the small women's part of the 'pit' area." (ECF No. 25 at 9 n.2.) Defendant Lewis then informed Plaintiff that "the nurses were in a shift change and she could not be seen." (ECF No. 25 ¶ 15.) Defendant Lewis informed Plaintiff that she would "tell the nurse and later [Lewis] and the nurse came into her cell." (ECF No. 25 ¶ 15.) Plaintiff informed the nurse that "she needed an inner cannula, and the nurse went and came back with one." (ECF No. 25 ¶ 15.)

At one point while in custody, Officers and employees of the City and County of Denver informed Plaintiff "that she could not leave until she saw a judge." (ECF No. 25 ¶ 16.)

Plaintiff has "no control over her bladder and has reduced control of her bowels." (ECF No. 25 ¶ 17.) Plaintiff "must wear diapers." (ECF No. 25 ¶ 17.)

Plaintiff "was in the cell . . . for a short time, when someone came in and said 'we just discovered that you were supposed to be here on a PR" and told her that they would get her out quickly. (ECF No. 25 ¶ 19.) Defendant Lewis returned Plaintiff's strap and told Plaintiff "that it had been held for 'safety reasons.'" (ECF No. 25 ¶ 19.)

4

Before Plaintiff was released, she was taken to see a nurse. (ECF No. 25 ¶ 20.) A property clerk and two other sheriff officers did not help Plaintiff put on her shoes. (ECF No. 25 ¶ 20.)

Plaintiff was in the "jail for a total of three hours." (ECF No. 25 ¶ 21.)

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(6) Motion

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Id*. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. A "plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these*

claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original, internal citation and quotation omitted).

The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation and citation omitted). The Tenth Circuit has further noted "that the nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id*. (Internal quotation and citation omitted.) Thus, the Tenth Circuit "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the [Supreme C]ourt stated will not do.'" *Id*. (Citation omitted.)

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in a plaintiff's favor. *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998) (citation omitted); *Seamons v. Snow*, 84 F.3d 1226, 1231-32 (10th Cir. 1996) (citations omitted). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions. . . .'" *Khalik*, 671 F.3d at 1190 (quoting *Iqbal*, 556 U.S. at 678). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id*.

### B. Pretrial Detainee Rights

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that only implicate the protection against deprivation of liberty without due process of law, [the United States Supreme Court has held] that the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The "Due Process Clause rather than the *Eighth Amendment*" governs a pretrial detainee's claim. *Bell*, 441 U.S. 535 n.16; *Blackmon v. Sutton*, 734 F.3d 1237, 1240 (10th Cir. 2013). "Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the *Eighth Amendment*." *Id*. The government may detain an individual prior to trial and "may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536-37.

"Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Id*. at 537. "Once the Government has exercised its . . . authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Id*. "Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Id*. at 537. The tests traditionally applied to determine whether a governmental act is punitive in nature are:

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment - - retribution and deterrence, whether the behavior to which it applies

>is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

*Id*. at 537-38 (internal quotation and citation omitted). "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id*. at 538 (citation omitted). "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id*. at 538 (internal quotation and citation omitted). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id. at 539.

The "Government must be able to take steps to maintain security and order at the institution . . . even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial" *Id*. at 540. "In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed [the United States Supreme Court's] warning that '[such] considerations are peculiarly within the province and professional expertise of correctional officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Id*. at 540 n.23.

"[P]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that [are] enjoyed by convicted prisoners." *Id*. at 545.

8

The Tenth Circuit has instructed the Court that to determine whether conduct constitutes punishment, a court must engage in a two part inquiry. *Blackmon*, 734 F.3d at 1241. First, a court "must ask whether an 'expressed intent to punish on the part of detention facility officials' exists." *Id*. (Internal quotation and citation omitted). "If so, liability may attach." *Id*. "If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective." *Id*. (citation omitted).

The Tenth Circuit has used the *Estelle v. Gamble*, 429 U.S. 97 (1976) standard for analyzing a pretrial detainee's rights to medical care because detention center officials owe pretrial detainees at least the same standard of care prison officials owe convicted inmates. *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014); *Blackmon*, 734 F.3d at 1244. *Estelle's* deliberate indifference standard contains both an objective and a subjective component. *Blackmon*, 734 F.3d at 1244. "Objectively, the patient's medical needs must be 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmon*, 734 F.3d at 1244 (internal quotation and citation omitted). "Subjectively, the defendant-official must 'know[] of and disregard[] an excessive risk to inmate health or safety.'" *Id*. (Internal quotation and citation omitted). "The Supreme Court has analogized [the subjective standard] to criminal recklessness, to the conscious disregard of a 'substantial risk of serious harm.'" *Id*. at 1244-45.

To state a "conditions of confinement" claim under the Eighth Amendment, Plaintiff must have pled facts establishing that "(1) the condition complained of is 'sufficiently serious' to implicate constitutional protection, and (2) prison officials acted with 'deliberate indifference' to inmate health or safety." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "In order to satisfy the first requirement, the

[pretrial detainee] must show that [s]he is incarcerated under conditions posing a substantial risk of serious harm. With regard to the second requirement, the Supreme Court has explained that deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result. The [Supreme] Court defined this deliberate indifference standard as equal to recklessness, in which a person disregards a risk of harm of which he is aware." *Id*. at 971-72 (internal quotations and citation omitted). Thus, an Eighth Amendment claim has both an objective (was the deprivation sufficiently serious) and subjective (did the officials act with a sufficiently culpable state of mind) component. *See Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

In regard to the subjective component of whether an official acted with deliberate indifference,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837; *accord DeSpain*, 264 F.3d at 975. Thus, deliberate indifference "requires both knowledge and disregard of possible [substantial] risks. . . ." *DeSpain*, 264 F.3d at 975.

C.  **Qualified Immunity**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To resolve a claim of qualified

immunity, the Court must consider two elements: (1) whether a constitutional violation occurred, and (2) whether the violated right was "clearly established" at the time of the violation. *Id*. at 230-31. The Court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236; *accord Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). "Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). Whether a right is "clearly established" is an objective test:

> [t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.

*Brown*, 662 F.3d at 1164 (internal quotation and citation omitted). A right is "clearly established" if the "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

### III. ANALYSIS

#### A. Defendant Lewis' motion to dismiss

Although Plaintiff may have been mistreated by Defendant Lewis, Plaintiff's allegations fail to state a claim under the Fifth[4], Fourteenth, or Eighth Amendments. A plaintiff may plead herself out of a cause of action by alleging facts which undermine her claim. *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Blumhagen v. Sabes*, Case No. 94-8022, 78 F.3d

---

[4] Plaintiff fails to state a Fifth Amendment claim because her allegations are directed against a state actor pursuant to Section 1983. *See Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013) (holding that the due process clause of the Fifth Amendment applies only to actions by the federal government while the due process clause of the Fourteenth Amendment applies to actions by state governments).

597 (10th Cir. Mar. 4, 1996) (unpublished decision). Plaintiff undermines many of the allegations in her Amended Complaint and the remaining allegations are insufficient to state a plausible claim because her allegations pertain to innocent conduct.

In simplest terms, because the United States Supreme Court has held that punishment of a pretrial detainee violates that individual's constitutional rights, the Court must determine whether Defendant Lewis' acts and omissions constituted punishment. *See Bell*, 441 U.S. at 535. If Defendant Lewis' conduct did not constitute punishment, then she is entitled to qualified immunity because Plaintiff will have failed to allege a constitutional violation. *See Herrera*, 589 F.3d at 1070. The Court holds that because Plaintiff fails to state a constitutional violation, Defendant Lewis is entitled to qualified immunity.

Plaintiff, in response to Defendant Lewis' motion to dismiss, argues that four of Lewis' acts or omissions violated Plaintiff's rights. The Court analyzes each of these alleged acts or omissions in turn.

### 1. Lewis Mocked Plaintiff For Her Being Frightened After She was Separated From Her Service Dog (ECF No. 42 at 13)

Plaintiff's service dog was separated from her because the "jail was without the proper facilities to take care of the dog." (ECF No. 25 ¶ 8.) In response, Plaintiff began to cry. (ECF No. 25 ¶ 9.) Defendant Lewis then asked Plaintiff why she was crying and after learning it was because she had taken her service dog away from her stated that "you should have thought about that before you did what you did to get put in here." (ECF No. 25 ¶ 9.)

Supreme Court precedent instructs the Court that a pretrial detainee may not be punished. Plaintiff does not argue that Defendant Lewis' *separating* her from her service dog constituted punishment. This lack of argument is for good reason—Defendant Lewis had a legitimate governmental objection, *i.e.*, the jail was not properly situated to care for the animal, and as such

her action did not constitute punishment. *See Bell*, 441 U.S. at 539. Rather, Plaintiff centers her argument on her interpretation that Lewis mocked her upon seeing her reaction. (ECF No. 42 at 13.) The Court is not convinced that Defendant Lewis' actions were punitive in nature using the traditional tests. First, Plaintiff fails to allege that Defendant Lewis "express[ed] an intent to punish." Second, mocking Plaintiff did not constitute an "affirmative disability or restraint." Third, "mocking" has not been regarded historically as punishment. Fourth, "mocking" does not promote the traditional aims of punishment – retribution and deterrence. The Tenth Circuit has previously held that verbal harassment, *i.e.*, laughing at a *prisoner*, is insufficient to state a constitutional deprivation under Section 1983. *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979). Thus, because the act of "mocking" was not punitive in nature, Defendant Lewis did not punish Plaintiff.

> 2. <u>Lewis Refused to Strap Plaintiff's Legs to the Wheelchair (ECF No. 42 at 13)</u>

Plaintiff's disability affects her ability to control her legs. (ECF No. 25 ¶ 10.) Plaintiff uses a detachable strap on her wheelchair to keep her legs shut. (ECF No. 25 ¶ 10.) Defendant Lewis removed Plaintiff's strap for "safety reasons." (ECF No. 25 ¶ 19.) Defendant Lewis wheeled Plaintiff to a glass-front cell where she was vulnerable to male inmates staring at her. (ECF No. 25 ¶¶ 13, 14.)

Plaintiff does not allege that Defendant Lewis expressed an intent to punish Plaintiff by removing the strap. (*See generally* ECF No. 25.) Rather, Plaintiff argues that Defendant Lewis' removing the strap bore no reasonable relationship to any legitimate governmental objective. The Court is not convinced. Plaintiff's Amended Complaint concedes that Defendant Lewis informed her that she removed the strap for "safety reasons." (ECF No. 25 ¶ 19.) The Court understands that it is Plaintiff's position that this statement is a lie. (ECF No. 25 ¶ 19.) But the

Court takes notice that other inmates (and it is not clear whether the other inmates were restricted in their movements) were in proximity to Plaintiff (ECF No. 25 ¶ 13) and thus could have used the strap for any number of purposes. Plaintiff alleges that she was "vulnerable to the male inmates staring at her exposed genital area" (ECF No. 25 ¶ 14) but Plaintiff undermines this claim by alleging that she was wearing a diaper (ECF No. 25 ¶ 17; *see also* ECF No. 42 at 13). Thus, she was not exposed. And Plaintiff undermines her allegation that Defendant Lewis' placing her in the glass-cell somehow constitutes punishment because she concedes that Defendants could not maneuver her wheelchair "to the small women's part of the 'pit' area." (ECF No. 25 at 9 n.2.) Additionally, Plaintiff's allegation that she could have been placed in another area of the jail, "such as . . . outside the nurse's office" (ECF No. 25 at 9 n.2) is undermined because Plaintiff also alleges that outside the nurse's station she was right "next to a male inmate" who had taunted her (ECF No. 25 ¶ 13).

The Supreme Court has stated loss of "privacy [is an] inherent incident[] of confinement." *Bell*, 441 U.S. at 537. While the Court does not condone conduct which unnecessarily exposes an inmate to a loss of privacy, the conduct at issue here was related to a legitimate governmental objective, *i.e.*, safety, and thus, Plaintiff's allegation regarding the strap removal fails to state a due process claim.

        3.     <u>Lewis Unhooked Plaintiff's Bra and Refused to Rehook the Bra (ECF No. 42 at 13)</u>

Plaintiff alleges that Defendant Lewis stated she was going to show Plaintiff how "unnice [she] can be." (ECF No. 25 ¶ 11.) Defendant Lewis then searched Plaintiff and in that process "unhooked [Plaintiff's] bra." (ECF No. 25 ¶ 11.) Plaintiff alleges that subsequent to the search, she asked Defendant Lewis to "hook her bra up again" and Defendant Lewis refused to

do so. (ECF No. 25 ¶ 11.) Plaintiff alleges that her "breasts were exposed, under her shirt." (ECF No. 25 ¶ 11.)

Similar to her other allegations, Plaintiff does not allege that Defendant Lewis, in unhooking and refusing to rehook the bra strap, expressed an intent to punish Plaintiff. (*See generally* ECF No. 25.) In fact, Plaintiff concedes that Defendant Lewis' actions were for the purpose of showing how "un-nice [she] can be." (ECF No. 25 ¶ 11.) And while no facts are alleged regarding the purpose of unhooking and refusing to rehook the bra such that the Court could analyze whether the actions bore a reasonable relationship to a legitimate governmental objective[5], the Court nevertheless finds that Plaintiff fails to allege a due process violation because she suffered no injury-in-fact. Plaintiff's allegations make clear that her nipples and breasts *were not exposed*. *See* Oxford Am. Dictionary 611 (3d ed. 2010) (defining exposed as "leav[ing] (something) uncovered or unprotected"). Even if it was discomforting not to have her bra attached, Plaintiff nipples and breasts were covered by her shirt. (ECF No. 25 ¶ 11.) Thus, no privacy interests were implicated by Defendant Lewis' acts or omissions related to the bra.

    4.    <u>Lewis Unreasonably Delayed in Responding to Plaintiff's Request to See a Nurse (ECF No. 42 at 13)</u>

Plaintiff alleges that she asked to see a nurse. (ECF No. 25 ¶ 13.) Plaintiff's subsequent allegation is that Defendant Lewis "wheeled her to a nurse's station where she was parked outside of the door." (ECF No. 25 ¶ 13.) Defendant Lewis then wheeled Plaintiff away from the nurse's station and placed her in a glass-front cell. (ECF No. 25 ¶¶ 13, 14.) Thereafter, Defendant Lewis informed Plaintiff that the nurses were in a shift change and she could not be seen at that time. (ECF No. 25 ¶ 15.) Plaintiff expressed to Defendant Lewis that "this is a life

---

[5] Plaintiff does not allege that the search violated her due process rights. (*See generally* ECF No. 25.) The Court recognizes that correctional officers have a significant interest in conducting a thorough search as part of an intake process). *Florence v. Bd of Chosen Freeholders of Cty. of Burlington*, 132 S.Ct. 1510, 1518 (2012).

threatening situation." Defendant Lewis agreed to tell the nurse and "later she and the nurse came into [Plaintiff's] cell." (ECF No. 25 ¶ 15.) Plaintiff fails to allege how much time passed between the time in which she requested to see a nurse and when the nurse saw her. Plaintiff does allege that she was in the jail for "a total of three hours." (ECF No. 25 ¶ 21.)

First, Plaintiff's claim for deliberate indifference to medical care fails as a Fourteenth Amendment claim. Plaintiff does not allege that Defendant Lewis, in allegedly providing a delayed response to Plaintiff's request for medical attention, expressed an intent to punish Plaintiff. (*See generally* ECF No. 25.) And Plaintiff does not allege facts which tie the alleged delay in medical treatment to punishment under any of the traditional tests. Further, any delay in medical attention was due to a shift change in medical personnel (ECF No. 25 ¶ 15) and thus, relates to a governmental objective, *i.e.*, the orderly operation of its facility.

Second, Plaintiff's claim for deliberate indifference to medical care fails at both the objective and subjective prongs of the Eighth Amendment analysis. It is not objectively clear that Plaintiff needed a doctor's attention at any point for a medical condition. Rather, Plaintiff was "terrified" that she *would* have a medical emergency. (ECF No. 25 ¶ 15; ECF No. 42 at 13.) Plaintiff's need for medical supplies to ensure that her tracheostomy tube did not become clogged is not sufficiently clear to a lay person. And Defendant Lewis did not disregard Plaintiff's request to see a nurse. When informed that Plaintiff was in a "life threatening situation," Defendant Lewis informed Plaintiff that she "would tell the nurse" and then proceeded to return with a nurse. (ECF No. 25 ¶ 15.) Because Plaintiff fails to plead facts that show Defendant Lewis objectively and subjectively acted with deliberate indifference to Plaintiff's medical needs, Plaintiff fails to plead a claim under the Eighth Amendment.

### B.  Plaintiff's Motion

On September 2, 2014, Plaintiff filed an "Unopposed Motion to Dismiss the Second Claim for Relief and to Dismiss All Defendants Except Delilah Lewis." (ECF No. 50.) Also on September 2, 2014, Magistrate Judge Shaffer granted Plaintiff's Motion. (ECF No. 51.) Because the referral in this case was only as to non-dispositive motions, Magistrate Judge Shaffer was without jurisdiction to grant Plaintiff the relief she sought in her motion. *See* 28 U.S.C. § 636(b)(1)(A) and (B); Fed R. Civ. P. 72(a) and (b). At this time, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, the Court grants Plaintiff's Motion.

### C.  Denver Defendants' motion to dismiss

Because Plaintiff moved to dismiss her claim against Denver Defendants (ECF No. 50) and the Court grants the motion, *supra* III.B, Denver Defendants' motion to dismiss (ECF No. 32) is moot as there is no claim against them.

## IV.  CONCLUSION

Based on the foregoing, the Court:

(1)  DENIES as MOOT Denver Defendants' motion to dismiss (ECF No. 32);

(2)  GRANTS Lewis' motion to dismiss (ECF No. 33);

(3)  GRANTS Plaintiff's unopposed motion to dismiss (ECF No. 50); and

(4)     DISMIISSES WITHOUT PREJUDICE Plaintiff's Amended Complaint (ECF No. 25).

DATED this 13th day of January, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge